IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| PERFORACIONES MARITIMAS<br>MEXICANAS S.A. de C.V., et al., | §<br>§<br>§ | |
| Plaintiffs, | §<br>§ | |
| v. | §<br>§ | CIVIL ACTION NO. G-05-419 |
| SEACOR HOLDINGS, INC.,<br>SEACOR MARINE MEXICO, INC.,<br>GRUPO TMM, S.A., and MARITIMAS<br>MEXICANA S.A. de C.V., | §<br><br>§<br>§ | |
| Defendants. | §<br>§<br>§ | |

**ORDER ON DEFENDANTS' MOTIONS TO DISMISS**

This case arises out of an allision between the M/V ISLA AZTECA ("AZTECA"), a Mexican

flag vessel, and the MODU TOTONACA, a drilling rig located in the Bay of Campeche, Mexico.

Now before the Court are Defendant Seacor Holding, Inc.'s ("Seacor") Rule 12(b)(6) Motion to

Dismiss for Failure to State a Claim or, in the alternative, Motion for Summary Judgment, Defendant

Seacor's First Amended Motion to Dismiss Based on Principles of International Comity, or, in the

Alternative, Motion to Dismiss Based on Plaintiff's Lack of Standing, Defendant Seacor's Motion

to Dismiss for Forum Non Conveniens, and Defendants Grupo TMM, S.A. ("TMM") and Maritima

Mexicana, S.A. de C.V.'s ("MarMex") Motion to Dismiss for Lack of Subject Matter Jurisdiction,

or, in the Alternative Forum Non Conveniens, or, in the Alternative, International Comity.  For the

reasons stated below: Seacor's Motion to Dismiss for Plaintiff Perforaciones Exploracion y

Produccion's Lack of Standing is **DENIED AS MOOT**.  TMM and MarMex's Motion to Dismiss

for Lack of Subject Matter Jurisdiction is **DENIED**.  Seacor's Motion to Dismiss for Failure to State

a Claim is **DENIED AS MOOT**, and its Motion for Summary Judgment is **GRANTED**, and

Plaintiffs' claims against Seacor and Seacor Marine Mexico, Inc. ("SMMI") are **DISMISSED WITH**

**PREJUDICE**.  Seacor's Motions to Dismiss for Principles of International Comity and *Forum Non*

*Coveniens* are **DENIED AS MOOT**.  TMM and MarMex's Motions to Dismiss for Principles of

International Comity and *Forum Non Conveniens* are **DENIED**.[1]

## I.  Background

This case arises out of the March 31, 2004 allision between the AZTECA, a Mexican flag

supply vessel, and the TOTONACA, a mobile drilling rig located in the Bay of Campeche that

appears to have been fixed at the time of the accident, within the territorial waters of Mexico.  The

AZTECA was owned and operated by MarMex, a Mexican shipping company.  MarMex is 60%

owned by TMM, and, at the time of the incident giving rise to this lawsuit, 40% owned by either

Seacor or SMMI.[2]  TMM is also a Mexican entity.  The domiciles and principal places of business

of TMM and MarMex are in Mexico.  The TOTONACA was owned by Perforaciones Maritimas

Mexicanas S.A. de C.V. ("PMM").

On May 6, 2004, MarMex filed an Ex Parte Declaratory Judgment Proceeding against

Perforaciones Maritimas Protexa S.A. de C.V. (PMM's predecessor) based on the International

Convention on Limitation of Liability Arisen from Maritime Law Claims, ratified by Mexico on

August 9, 1994.  On May 10, 2004, the Sixth District Court in Civil Matters in the Federal District

---

[1]The Court does not consider this Order worthy of publication.  Accordingly, it has not requested and does not authorize publication.

[2]The Parties dispute whether the stock is held by Seacor or by SMMI.

in Mexico denied MarMex's request, and MarMex appealed.  On October 27, 2004, the Sixth District

Court vacated its earlier ruling and entered an Order granting MarMex's request for relief.  That Court

ordered service of MarMex's Original Petition, exhibits and Order on Perforaciones Exploracion y

Produccion ("Protexa"), PMM and Pemex Exploracion y Produccion.  This action is still pending in

Mexico.

On May 7, 2004, PMM filed a 'Criminal Complaint" with the Investigating Prosecutor's

Office in Ciudad del Carmen, Campeche, against MarMex for damages arising from the allision.  This

criminal proceeding was ultimately dismissed.

On July 28, 2005, Protexa and Certain Reinsuring Underwriters Subscribing to the

Reinsurance Contract Policy No. AHE-030044 as Amended to Policy No. AHE-004004

("Underwriters") filed suit against Seacor, TMM, and MarMex for damages sustained by the

AZTECA during the allision.  On July 14, 2006, the Court granted Plaintiffs' Motion for Leave to File

an Amended Complaint.  The Amended Complaint substituted PMM for Protexa, since it is

undisputed that PMM is the real party in interest, and it also added SMMI as a defendant.  The

Amended Complaint also eliminated the cause of action for use of a dangerous weapon pursuant to

Article 1913 of the Federal Civil Code of Mexico, so the only claims remaining arise under the

admiralty and maritime laws of the United States.

Now before the Court are several motions to dismiss, referenced above.  As manifested by the

titles of the aforementioned Motions, many of the issues raised by the individual Defendants overlap

with one another.  Therefore, the Motions will be considered jointly, and each ground for dismissal

will be discussed once.[3]

## II.  Plaintiff Protexa's Lack of Standing

Seacor originally moved to dismiss on the ground that Protexa lacked standing to sue.[4]  In its

Motion, it argued that Protexa was not the true party in interest because is did not own the

TOTONACA and was not a party to the drilling contract between PMM (the rig owner) and Pemex.

PMM was the actual owner of the TOTONACA.  Recently, Plaintiffs realized the error in their

pleadings, and filed for leave to amend their Complaint.  On July 14, 2006, Plaintiffs were given leave

to amend, and have since filed their Amended Complaint, which substituted PMM for Protexa.  At

this time, it appears that all of the proper Parties have been named, and the dispute over the proper

plaintiff has been resolved.  Therefore, Seacor's Motion to Dismiss on the ground that Protexa lacks

standing to sue is **DENIED AS MOOT**.

## III.  Lack of Subject Matter Jurisdiction

### A. Legal Standard

District courts are powerless to exercise jurisdiction in excess of the limited jurisdiction

statutorily conferred upon them by Congress.  *See Margin v. Sea-Land Servs., Inc.*, 812 F.2d 973, 976

(5th Cir. 1987).  A case is properly dismissed for lack of subject matter jurisdiction when a court lacks

the statutory or constitutional power to adjudicate the case.  *See Strain v. Harrelson Rubber Co.*, 742

---

[3]Defense Counsel is advised that in the future, for the sake of brevity and out of
consideration for the limited resources of the Court, they should seriously consider filing a single
*joint* dispositive motion when there is such a commonality of interests rather than have the Court
sort through four redundant motions.

[4]No one challenged the Underwriters' standing to sue.

F.2d 888, 889 (5th Cir. 1984). If the defendant subsequently challenges the plaintiff's stated basis for jurisdiction, the plaintiff bears the burden of establishing that jurisdiction exists. *See Harvey Const. Co. v. Robertson-CECO Corp.*, 10 F.3d 300, 303 (5th Cir. 1994); *Margin*, 812 F.2d at 976. A court's consideration of such jurisdictional disputes should, however, focus only on discerning "some discreet jurisdiction requisite," as indicated by the facts alleged in the plaintiff's complaint; the inquiry should not address the merits of the plaintiff's claim. *Green v. Ferrell*, 664 F.2d 1292, 1294 (5th Cir. 1982).

### B. Analysis

In their Motion to Dismiss, TMM and MarMex contend that this court lacks subject matter jurisdiction over Plaintiffs' claims. They argue that because the allision did not occur on the navigable waters of the United States, but in Mexican waters in the Bay of Campeche, this case does not fall within the Court's admiralty and maritime jurisdiction. The Court respectfully disagrees.

The claims asserted are basic tort claims that fall within the scope of this Court's admiralty jurisdiction. "[A] party seeking to invoke federal admiralty jurisdiction pursuant to 28 U.S.C. § 1333(1) over a tort claim must satisfy conditions both of location and of connection with maritime activity." *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534, 115 S. Ct. 1043, 1048, 130 L. Ed. 2d 1024 (1995). Thus, the injury or incident must have occurred on navigable waters, and the general character of the activity giving rise to the incident must bear a substantial relationship to traditional maritime activity. *Id.* at 534, 115 S. Ct. at 1051. *See also Sisson v. Ruby*, 497 U.S. 358, 110 S. Ct. 2892, 111 L. Ed. 2d 292 (1990); *Executive Jet Aviation, Inc. v. City of Cleveland*, 409 U.S. 249, 93 S. Ct. 493, 34 L. Ed. 2d 454 (1972). An allision between a vessel and a drilling rig on navigable waters clearly satisfies both requirements for the exercise of admiralty tort jurisdiction. *See Kim v. Frank Mohn A/S*, 909 F. Supp. 474, 476–77 (S.D. Tex. 1995) (finding

admiralty and maritime jurisdiction even though plaintiff and defendant were citizens of foreign countries and the vessel was foreign-owned and foreign-flagged).    TMM and MarMex's argument that a tort must have occurred on the navigable waters of the United States to fall within this Court's admiralty and maritime jurisdiction is unpersuasive.  In support of their argument, they rely upon the Supreme Court's decision in *Victory Carriers, Inc. v. Law*, 404 U.S. 202, 92 S. Ct. 418, 30 L. Ed. 2d 383 (1971).  In that case, the Supreme Court stated, in *dicta*, that "[t]he historic view of this Court has been that the maritime tort jurisdiction of the federal courts is determined by the locality of the accident and that maritime law governs only those torts occurring *on the navigable waters of the United States*."  *Id.* at 205, 92 S. Ct. at 421 (emphasis added).  *Victory Carriers* considered the question whether state law or federal maritime law governs the suit of a longshoreman injured on a pier while moving cargo destined to be loaded on a ship.  *See id.* at 202–03, 92 S. Ct. at 420.  It did not involve questions of the applicability of maritime jurisdiction to accidents on foreign waters. Furthermore, the test for maritime and admiralty jurisdiction laid out in *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.* only requires that the tort occur on "navigable waters" rather than the "navigable waters of the United States."  *See Grubart*, 513 U.S. at 534.

The Fifth Circuit has not provided a clear answer to this question.  Recently, the Third Circuit noted that "a tort need not have occurred in waters under the jurisdiction of the United States for us to exercise admiralty jurisdiction." *Malaysia Int'l Shipping Corp. v. Sinochem Int'l Co. Ltd.*, 436 F.3d 349, 355, n.11 (3d Cir. 2006).  Other courts have followed the *dicta* of *Victory Carriers*.  *See e.g.*, *Dunham v. Hotelera Canco S.A.*, 933 F. Supp. 440, 448 (E.D. Va. 1996) (holding that the Court lacked admiralty jurisdiction over a tort that occurred in territorial waters of Mexico).  Ultimately, this presents a question of policy best left to the purview of the Fifth Circuit, and this Court will

follow any guidance that the Circuit might provide.  In the meantime, the Court agrees with the

analysis of admiralty jurisdiction as laid out in Thomas J. Schoenbaum's treatise, ADMIRALTY AND

MARITIME JURISDICTION.  Schoenbaum states that:

> In the United States collision jurisdiction potentially extends to the four corners of the
> globe, to the high seas and even foreign territorial waters....  The wide availability of
> jurisdiction in collision cases may encourage forum shopping to take advantage of
> differences in substantive law.  *Blatant forum shopping, however, is a cause for
> concern, and the courts have adopted several ways of abstaining from exercising
> jurisdiction or of applying general maritime or foreign law in collision cases where
> justice requires.*

Arthur J. Schoenbaum, ADMIRALTY AND MARITIME LAW, § 14-9, at 131 (4th ed. 2004).  One of the

primary methods of abstention in cases such as these is the doctrine of *forum non conveniens*.  *See

id.* (noting that the application of *forum non conveniens* "is particularly relevant in a case where the

dispute is between parties and vessels of foreign nationalities [or where] the collision occurred in

international or foreign waters...").  This case meets the standard set forth in *Grubart*.  Admiralty

jurisdiction exists, and concerns about whether this Court is the proper forum is best left to choice

of law analysis and the applicability of the *forum non conveniens* doctrine.[5]

Therefore, TMM and MarMex's Motion to Dismiss for Lack of Subject Matter Jurisdiction

is respectfully **DENIED**.

---

[5]TMM and MarMex also argue that this Court lacks diversity jurisdiction because Parties
on both sides are Mexican citizens.  PMM is a Mexican corporation, and TMM and MarMex are
both Mexican corporations.  The Court finds that complete diversity is lacking, and the only basis
for jurisdiction in this case is this Court's admiralty and maritime jurisdiction.  *See Ed & Fred,
Inc. v. Puritan Marine Ins. Underwriters Corp.*, 506 F.2d 757, 758 (5th Cir. 1975) (finding no
diversity jurisdiction in a suit brought by an alien against a citizen of a state and another alien).
Additionally, both Seacor and Plaintiff Underwriters have their principal place of business in
Texas.

**IV.  Seacor Holding, Inc.'s Fed. R. Civ. P. 12(b)(6) Motion to Dismiss for Failure to State a Claim, or, in the Alternative, Motion for Summary Judgment**

Seacor next argues that the lawsuit against it should be dismissed on the ground that Plaintiffs have failed to allege sufficient facts to support any of their claims against Seacor because Seacor did not own any stock in MarMex, the owner and operator of the AZTECA.  Seacor alleges that SMMI is the actual shareholder of MarMex, along with TMM.  Alternatively, Seacor argues that it is entitled to summary judgment because even if it is a shareholder of MarMex, as a shareholder it cannot be held liable for the acts of the corporation, and MarMex is a Mexican corporation.  The Court finds that whether Seacor or SMMI is the appropriate shareholder is a moot point.  As shareholders of a corporation, they are insulated from liability.  Plaintiffs have failed to raise any question of fact to suggest otherwise.

**A.  Motion to Dismiss for Failure to State a Claim Pursuant to Fed. R. Civ. P. 12(b)(6)**

A party is entitled to dismissal under Fed. R. Civ. P. 12(b)(6) when an opposing party fails to state a claim upon which relief may be granted.  When considering a motion to dismiss for failure to state a claim, the Court accepts as true all well-pleaded allegations in the complaint and views them in the light most favorable to the plaintiff.  *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (noting that a court must construe the complaint liberally in favor of the plaintiff); *see also Malina v. Gonzales*, 994 F.2d 1121, 1125 (5th Cir. 1993).  A motion to dismiss should be granted only when it appears without a doubt that a plaintiff can prove no set of facts in support of his claims that would entitle him to relief.  *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514, 122 S. Ct. 992, 998, 152 L. Ed. 2d 1 (2002).  *See also Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S. Ct. 99, 102, 2 L. Ed. 2d 80 (1957); *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1067 (5th Cir.

1994).  "A motion to dismiss under Rule 12(b)(6) is viewed with disfavor and is rarely granted."

*Collins*, 224 F.3d at 498.

### B.  Summary Judgment Standard

Summary judgment is appropriate if no genuine issue of material fact exists and the moving

party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c).  *See also Celotex Corp.*

*v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552–53, 91 L. Ed. 2d 265 (1986).  The party moving

for summary judgment bears the initial burden of "informing the district court of the basis for its

motion, and identifying those portions of [the record] which it believes demonstrate the absence of

a genuine issue of material fact."  *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2553.  The non-moving party

must come forward with "specific facts showing there is a genuine issue for trial."  Fed. R. Civ. P.

56(e).  *See also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S. Ct.

1348, 1356, 89 L. Ed. 2d 538 (1986).  The court must view all evidence in the light most favorable

to the non-movant.  *See, e.g., Broussard v. Parish of Orleans*, 318 F.3d 644, 650 (5th Cir. 2003).  If

the evidence would permit a reasonable fact finder to find in favor of the non-moving party, summary

judgment should not be granted.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.

Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

### C.  Analysis

Seacor claims that it is entitled to dismissal because Plaintiffs failed to allege any facts

supporting liability against it.  In the alternative, Seacor argues that there is no genuine issue of

material fact on any of Plaintiffs' claims and it seeks summary relief pursuant to FED. R. CIV. P. 56.

First, Seacor claims that it does not own and has not owned stock in MarMex, but that the stock in

MarMex is actually held by SMMI.  Second, that even if it did own stock in MarMex, it is insulated from liability because MarMex is a corporation.

Plaintiffs originally brought suit against Seacor and not SMMI.  However, since Seacor filed its 12(b)(6) Motion, Plaintiffs moved for leave to amend their Complaint in part to add SMMI as a Defendant.  On July 14, 2006, Plaintiffs were given leave to amend, and they have since filed their Amended Complaint, which added SMMI as a defendant. In their Amended Complaint, Plaintiffs allege that MarMex is a joint venture of Seacor and TMM, or alternatively, SMMI and TMM, and that Defendants are jointly and severally liable for the negligent acts, omissions, and breach of warranty alleged on the basis that Defendants constituted a single business enterprise, carrying out a common business objective.  Plaintiffs allege that their claims are imputable to Seacor and TMM, or alternatively SMMI and TMM because they were all mutual agents and principals in the operations of the AZTECA.  Plaintiffs only theory for imputation is that MarMex is a joint venture.

The declarations of Seacor Vice President John Gellert, MarMex Deputy Director Carlos Alberto Lopez Madujano, and the TMM Legal Director Marco Flavio Rigada Soto demonstrate two things. First, that MarMex was owned by two shareholders: SMMI and TMM.  Second, that MarMex is a Mexican corporation, formed on March 16, 1961 under the laws of Mexico as a Mexican shipping company.  Although Plaintiffs refer to numerous publications from the Internet in support of their arguments that MarMex is a joint venture and that Seacor owned stock in MarMex, these documents are not enough to create a genuine issue of fact as to MarMex's corporate status.  As the Court has previously stated, "information obtained from the Internet is 'inherently untrustworthy.'" *Barbour v. Head*, 178 F. Supp. 2d 758, 760 n.3 (S.D. Tex. 2001) (quoting *St. Clair v. Johnny's Oyster & Shrimp, Inc.*, 76 F. Supp. 2d 773, 774 (S.D. Tex. 1999)).  At this stage, allegations on the Internet, without

more, are not enough to create a genuine issue of material fact regarding MarMex's ownership and corporate status.  The Court finds that MarMex is a Mexican corporation.  Plaintiffs have not alleged that the corporate veil should be pierced in this instance. *See Baker v. Raymond Int'l, Inc.*, 656 F.2d 173, 179–80 (5th Cir. 1981) (explaining that in a maritime tort action, a plaintiff generally has recourse against the corporate entity that incurred the liability and not its parents, stockholders or other parties connected with the entity).  Additionally, Plaintiffs have produced no evidence indicating that the corporate veil should be pierced in this case, or that MarMex is inadequately insured. Therefore, Seacor's Motion for Summary Judgment is hereby **GRANTED**, and Plaintiffs' claims against Seacor and SMMI are **DISMISSED WITH PREJUDICE**.  Seacor's remaining Motions to Dismiss on the grounds of international comity and forum non conveniens are **DENIED AS MOOT**.

## V.  International Comity

TMM and MarMex next move for dismissal on the ground of ground of international comity, which is the "recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens, or of other persons who are under the protection of its laws." *Hilton v. Guyot*, 159 U.S. 113, 164, 16 S. Ct. 139, 143, 40 L. Ed. 95 (1895).  *See also Societe Nationale Industrielle Aeropatiale v. United States District Court for the Southern District of Iowa*, 482 U.S. 522, 543 n.27, 107 S. Ct. 2542, 2556, 96 L. Ed. 2d 461 (1987); *In Re French*, 440 F.3d 145, 152-53 (4th Cir. 2006); *Sequihua v. Texaco, Inc.*, 847 F. Supp. 61, 63 (S.D. Tex. 1994).  It "is neither a matter of absolute obligation, on the one hand, nor of mere courtesy and good will, upon the other." *Hilton*, 159 U.S. at 163–64, 16 S. Ct. at 143.

In making a determination as to whether to exercise such discretion, courts have generally referred the factors listed in RESTATEMENT (THIRD) OF FOREIGN RELATIONS LAW § 403 (1987). *See In Re French*, 440 F.3d at 153 (collecting cases); *Sequihua*, 847 F. Supp. at 63.  Those factors include: (1) the link between the regulating state and the relevant activity; (2) the connection between that state and the person responsible for the relevant activity; (3) the nature of the regulated activity and its importance to the regulating state; (4) the effect of regulation on justified expectations; (5) the significance of regulation to the international system; (6) the extent of other nations' interests; and (7) the likelihood of conflict with other nations' regulations. *See* REST. (THIRD), *supra*, § 403(4). *See also In Re French*, 440 F.3d at 153.  In  *Sequihua v. Texaco, Inc.*, the Southern District of Texas applied a somewhat simpler list of factors, including: (1) whether the defendant sought to be sued in the United States has consented to jurisdiction in the foreign forum; (2) the location of the alleged wrong and extent to which it takes place in a foreign state; (3) residence of the parties; (4) enforcement of a judgment entered by the United States forum; (5) interest of the foreign state in exercising its sovereign right to regulate its own environment and resources; and (6) whether the foreign nation's law conflicts with United States law.  *See Sequihua*, 847 F. Supp. at 63 (citing *Timberlane Lumber Co. v. Bank of America Nat'l Trust and Savings Assn.*, 749 F.2d 1378 (9th Cir. 1984).  Applying all of these factors, the Court finds that principles of international comity do not warrant dismissal.

On the one hand, the allision and damages occurred in Mexican waters, between a Mexican vessel and a Mexican rig, owned by Mexican corporations.  Parties on both sides are Mexican citizens, and the Mexican courts would have jurisdiction over all the Parties in this case.  Finally, Mexico clearly has an interest in regulating torts that occur within its territorial waters.  On the other

hand, there has been no persuasive argument made by TMM and MarMex that there would be problems enforcing a judgement entered by this Court, or that there are any substantial conflicts with Mexican law. Plaintiffs' Amended Complaint only alleges causes of action arising under the general maritime law of the United States. There is no indication that this Court will be called upon to interpret or apply Mexican law. Although there have been other proceedings involving these Parties in Mexico, there is no indication at this time that those proceedings conflict with the lawsuit filed in this Court.

While the facts of this case present a close question, TMM and MarMex have failed to show that the principles of international comity should disrupt Plaintiffs' choice of forum. Therefore, TMM and MarMex's Motion to Dismiss on the ground of international comity is respectfully **DENIED**.

## VI. Forum Non Conveniens

Finally, TMM and MarMex have moved to dismiss on the ground of *forum non conveniens*. The doctrine of *forum non conveniens* derives from the proposition that "[i]n rare circumstances, federal courts can relinquish their jurisdiction in favor of another forum." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 722, 116 S. Ct. 1712, 1724, 135 L. Ed. 2d 1 (1996). Pursuant to this doctrine, a court may dismiss a case in favor of a foreign forum if the defendant establishes that the convenience of the parties and the court, coupled with the interests of justice, indicate that the lawsuit is better suited for adjudication elsewhere. *See Karim v. Finch Shipping Co., Ltd.*, 265 F.3d 258, 268 (5th Cir. 2001).

Federal courts employ a two-part analysis when applying the *forum non conveniens* doctrine in the international context. *See Piper Aircraft v. Reyno* 454 U.S. 235, 255-56, 102 S. Ct. 252,

265–66, 70 L. Ed. 2d 419 (1981).  The first step involves a determination of whether an adequate and available foreign forum exists.  *See Sydow v. Acheson & Co.*, 81 F. Supp. 2d 758, 768 (S. D. Tex. 2000).  Next, if an adequate alternative forum is available, the court must decide whether "certain private and public interest factors weigh in favor of dismissal." *McLennan v. Am. Eurocopter Corp.*, 245 F.3d 403, 424 (5th Cir. 2001).  If the relevant private interest factors advocate dismissal, however, no inquiry into the public interest factors in needed.  *See Baris v. Sulpicio Lines*, 932 F.2d 1540, 1550-51 (5th Cir. 1991).  While undertaking both steps of this analysis, courts must remain mindful that "the central purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient." *Piper Aircraft*, 454 U.S. at 256, 102 S. Ct. at 266.  *See also Syndicate 420 at Lloyd's London v. Early Am. Ins. Co.*, 796 F.2d 821, 827 (5th Cir. 1986).  The "*forum non conveniens* determination is committed to the sound discretion of the trial court." *Piper Aircraft*, 454 U.S. at 266 (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 511-12 (1947)).

The private factors to be considered in a *forum non conveniens* analysis relate to the convenience of the parties, and include: the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling witnesses; the cost of obtaining attendance of willing witnesses; possibility of viewing the premises, if such viewing would be appropriate to the action; other practical problems that make a trial of a case easy, expeditious, and inexpensive; enforceability of judgment; and whether the plaintiff has sought to vex, harass, or oppress the defendant. *See Karim,* 265 F.3d at 268 n.14 (citations omitted). The "public interest" factors include: administrative difficulties; reasonableness of imposing jury duty on the people of the community; holding the trial in the view of those affected; and the local interest in having localized controversies decided at home.  *See id.*

14

### A. Adequate and Available Forum

Defendant argues that Mexico presents an adequate alternative forum for the adjudication of this dispute. The Parties have previously availed themselves of the Mexican legal system or are subject to jurisdiction in the Mexican courts. There is no indication that Mexican law would not allow redress of any of the claims alleged by Plaintiff. Generally, an alternative forum is available to the plaintiff when the foreign court can assert jurisdiction over the litigation sought to be dismissed. *See Piper*, 454 U.S. at 254 n. 22, 102 S. Ct. at 265 n. 22 (citation omitted) ("Ordinarily, [the requirement] will be satisfied when the defendant is amenable to process in the other jurisdiction"). The alternative forum is adequate as long as the parties will be treated fairly and will not be deprived of all remedies there. *See Sydow*, 81 F. Supp. 2d at 768. *See also Piper*, 454 U.S. at 254 n. 22, 102 S. Ct. at 265 n. 22. Plaintiff has not presented, and the Court is not aware of, any obstacles to justice within the Mexican court system. Accordingly, the Court finds that Mexico is an available and adequate forum for litigation of this matter.[6]

### B. Private Interests

Although an adequate and available forum exists, the private interest factors in this case do not compel dismissal. Any documentary evidence needed in the preparation and presentation of this case can be transferred between Mexico and Texas with relative ease, so that bears no burden on this *forum non conveniens* analysis. Additionally, Plaintiffs have shown that many of the relevant documents have already been produced, and they have been translated. While the cost and ability of

---

[6]The Court notes that Plaintiffs' argument that Plaintiff Underwriters would not be subject to jurisdiction of the Mexican courts is doubtful, and Plaintiffs offer no support for this argument other than the indication that Plaintiff Underwriters claim not to consent. If Plaintiff Underwriters choose to insure Mexican companies, they cannot complain when they are haled into court in Mexico.

obtaining testimony and attendance of both willing and unwilling witnesses weighs somewhat in favor of a Mexican adjudication, Plaintiffs have identified several witnesses amenable to this Court's jurisdiction, and most, if not all, of the witnesses in this case will likely be within the employ of the Parties, and their attendance at trial can be compelled. There has been no showing that Plaintiffs sought this forum to vex or harass Defendants.

Plaintiffs have shown that the distance between the location of the vessels involved in this allision and the location of the Parties is equally inconvenient whether this matter is tried in Mexico or tried in Galveston. Additionally, trial in this case is set for September 11, 2006. The Motions now before the Court did not become ripe until June 16, 2006, a mere three months away from trial. This matter would be significantly delayed if it were dismissed to be refiled in Mexico at this late stage. Thus, the Court finds that private interest factors do not support dismissal for *forum non conveniens*.

3. *Public Interest*

Courts often turn to the interests of the public when considering an argument of *forum non conveniens*. The "public interest" factors include: administrative difficulties, such as burdening court dockets; the reasonableness of imposing jury duty on the people of the community; holding the trial in the view of those affected; and the local interest in having localized controversies decided at home. *See Karim,* 265 F.3d at 268 n.14 (citations omitted).

Although this Court has substantial docket obligations, it is by no means too much of a burden to handle this case, and thus far no administrative difficulties have presented themselves. Next, this case is not set for the Court's jury docket, so it will not be imposing the burden of jury duty on the citizens of this Division. Furthermore, Plaintiffs have amended their complaint to only allege causes of action arising under the general maritime laws of the United States, which this Court is aptly suited

to render judgment upon. While the Court concedes that Mexico clearly has an interest in having this controversy decided in its own courts, that alone is not enough to warrant dismissal. The public interest factors in this suit do not warrant dismissal based on the doctrine of *forum non conveniens*.

TMM and MarMex have failed to show that trial would be more convenient in Mexico. Therefore, TMM and MarMex's Motion to Dismiss on the ground of *forum non conveniens* is respectfully **DENIED**.

## V.  Conclusion

The Court thanks both Parties for the excellent advocacy displayed in the well-prepared, albeit numerous, briefs submitted in connection with this Motion. For the reasons stated above, the Court orders that: (1) Seacor's Motion to Dismiss on the ground that Protexa lacks standing to sue is **DENIED AS MOOT**; (2) TMM and MarMex's Motion to Dismiss for Lack of Subject Matter Jurisdiction is respectfully **DENIED**; (3) Seacor's Motion for Summary Judgment is hereby **GRANTED**, and Plaintiffs' claims against Seacor and SMMI are **DISMISSED WITH PREJUDICE**; (4) Seacor's remaining Motions to Dismiss for Principles of International Comity and *Forum Non Conveniens* are **DENIED AS MOOT**; (5) TMM and MarMex's Motion to Dismiss on the ground of International Comity is **DENIED**; and (6) TMM and MarMex's Motion to Dismiss for *Forum Non Conveniens* is **DENIED**. All taxable costs, expenses and attorneys' fees shall be borne by the Party incurring same.

**IT IS SO ORDERED**.

**DONE** this 21st day of July, 2006, at Galveston, Texas.


_____
Samuel B. Kent
United States District Judge