IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| PERFORACIONES MARÍTIMAS MEXICANAS, S.A. de C.V., et al., § § § | |
| Plaintiffs, § § | |
| v. § | CIVIL ACTION NO. G-05-419 |
| § | |
| GRUPO TMM, S.A. de C.V., et al., § § § | |
| Defendants. § | |

## ORDER

This case arises out of an allision between the M/V ISLA AZTECA ("Azteca") and the Mobile Offshore Drilling Unit Totonaca ("Totonaca"), which occurred in the Bay of Campeche, Mexico on March 31, 2004. Plaintiff Perforaciones Marítimas Mexicanas, S.A. de C.V. ("PMM") was the owner and operator of the Totonaca, and Defendant Marítima Mexicana S.A. de C.V. ("MarMex") was the owner and operator of the Azteca. Defendants Grupo TMM S.A. de C.V. ("TMM") and MarMex filed an Opposed Motion and Notice to Apply Mexican Law and an Opposed Motion for Summary Judgment and Transfer to Mexico's Sixth District Court in Civil Matters of the First Circuit, along with various Supplements and Exhibits. Plaintiffs PMM and Certain Reinsuring Underwriters Subscribing to Reinsurance Contract No. AHE-030044 as Amended to No. AHE-04004 ("Underwriters") filed a Response to the Motions, and MarMex and TMM filed a Reply. All of the briefing has been excellent. Plaintiffs then filed a Surreply. MarMex and TMM also filed a

1

Supplement to their Reply.  For the reasons outlined below, Defendants' Motions are **DENIED**.[1]

## I. Background[2]

The allision between the Azteca and the Totonaca occurred on March 31, 2004.  The Azteca, a Mexican flagged supply vessel, was owned and operated by MarMex on the date of the allision, and TMM owned 60% of MarMex.  Both TMM and MarMex are Mexican entities.  The Totonaca, a Mexican flagged mobile drilling rig that was affixed to the floor of the Bay of Campeche at the time of the allision, was owned and operated by PMM, a Mexican corporation.

On May 6, 2004, MarMex filed a petition in Mexico to limit its liability for the allision (the "Mexican Limitation") pursuant to the International Convention on Limitation of Liability for Maritime Claims, London 1976 (the "London Convention"), which was ratified by Mexico in the Mexican Navigation Act of 1994.  This proceeding resulted in the establishment of a limitation fund for all parties claiming damages arising from the Bay of Campeche allision.

On May 26, 2004, PMM's predecessor initiated a *Querella*, which is a criminal complaint or accusation for an alleged or suspected criminal offense, against MarMex and the crew of the Azteca in Cuidad del Carmen, Mexico.  The *Querella* was eventually dismissed after an investigation indicated there was no evidence of criminal conduct.

On July 28, 2005, PMM's predecessor filed this lawsuit seeking damages for negligence, gross negligence, and unseaworthiness.  In Defendants' answer, they claimed that the Mexican Limitation applies to this case.  They then filed a Motion to Dismiss based on international comity and *forum*

---

[1]The Court does not consider this Order worthy of publication.  Accordingly, it has not requested and does not authorize publication.

[2]A more detailed procedural history is outlined in the Order on Defendants' Motion to Dismiss, which is hereby incorporated by reference.

*non conveniens*, in which they argued that the *Querella* and the Mexican Limitation action conflicted with this case. The Court found that "there have been other proceedings involving these Parties in Mexico, [but] there is no indication at this time that those proceedings conflict with the lawsuit filed in this Court." Order on Defendants' Motion to Dismiss at 13. TMM and MarMex filed a Notice of Appeal to the Fifth Circuit on July 31, 2006. On November 30, 2006, the Fifth Circuit dismissed the appeal for lack of jurisdiction.

In the meantime, TMM and MarMex filed a Motion for Summary Judgment. They also gave the Court notice that they intended to raise an issue concerning the law of Mexico pursuant to Federal Rule of Civil Procedure 44.1 by filing a Motion and Notice to Apply Mexican Law. A hearing on the Motion and Notice to Apply Mexican Law was held on February 15, 2007, and the Parties indicated they were having settlement discussions. The case was stayed until March 2, 2007 pending these discussions. On March 2, 2007, the Parties appeared before the Court at a Status Conference and stated that they were unable to settle. They also indicated that a Hearing in which the Court heard testimony from the Parties' perspective experts on Mexican law may be helpful to the Court's ultimate resolution of the Motions. The Court agreed, and said Hearing occurred on April 27, 2007 ("Second Hearing").

The Court was honored to hear the testimony of two renowned experts on Mexican Law during the Second Hearing. Defendants' expert, Ignacio Ruiz Melo ("Dr. Melo"), has been practicing admiralty law in Mexico for over fifty years. Dr. Melo has a rich ancestral history in the field, as he is the fourth generation in his family to practice admiralty law in Mexico, and his son, who is also an admiralty lawyer, is the fifth. He has been a professor of maritime law and the law of the sea since 1969, and he has served as the Dean of two different Mexican law schools. He has also been a

consultant to the Mexican Delegation in several Congresses and Diplomatic Conferences on Maritime Law. In fact, Dr. Melo was the only practicing maritime lawyer on the Mexican commission that promulgated the Navigation Act of 1994.

Plaintiffs' expert, Jose David Enriquez Rosas ("Dr. Enriquez"), has been practicing law since 1997, and he works for a law firm in which he is the head of the section dealing with admiralty and maritime law. He has written eight textbooks about various admiralty issues, and Dr. Melo wrote complimentary introductions in three of Dr. Enriquez's books. Dr. Enriquez has acted as legal advisor to the Government of Mexico since 2000. He was responsible for collecting the drafts of the 2006 Navigation Act and is responsible for the coordination and development of regulations arising from that Act. He is a research fellow at two universities and sometimes teaches maritime law. Dr. Enriquez has an LLM from Spain and England and a Ph.D. from Mexico, all in maritime law. In over sixteen years on this Bench, the Court has rarely had the privilege of such extraordinarily qualified experts testifying on such an interesting subject.

**II. Motion to Apply Mexican Law**

*A. Legal Standard*

The question of whether United States or foreign substantive law applies to a maritime injury case is "made pursuant to a multifactored analysis set out in *Lauritzen v. Larsen*, 345 U.S. 571, 73 S. Ct. 921, 97 L. Ed. 1254 (1953) and further elaborated in *Hellenic Lines Ltd. v. Rhoditis*, 398 U.S. 306, 90 S. Ct. 1731, 26 L. Ed. 2d 252 (1970)." *Schexnider v. McDermott Int'l, Inc.*, 817 F.2d 1159, 1161 (5th Cir. 1987). Under these cases, the following eight factors determine the choice of law: (1) the allegiance or domicile of the plaintiff; (2) the place of the contract; (3) the allegiance of the defendant shipowner; (4) the law of the flag; (5) the accessibility of the foreign forum; (6) the place

of the wrongful act; (7) the law of the forum; and (8) the defendant shipowner's base of operations. These factors, while potentially suggestive of a mechanical approach to determining choice of law, are not all of equal or even comparable significance. *See Rhoditis*, 398 U.S. at 308–09, 90 S. Ct. at 1733–34; *Schexnider*, 817 F.2d at 1161. Generally, the law of the flag and the defendant shipowner's base of operations weigh most heavily in the determination. *See Lauritzen*, 345 U.S. at 583, 73 S. Ct. at 929 (stating that the law of the flag is of "cardinal importance" in determining applicable law); *Rhoditis*, 398 U.S. at 309–10, 90 S. Ct. at 1734–35 (holding that the defendant's New York base of operations favored U.S. law despite the ship's Greek flag). On the other hand, the place of the wrongful act and the inaccessibility of a foreign forum are seldom relevant to a maritime choice-of-law determination. *See Lauritzen*, 345 U.S. at 582, 73 S. Ct. at 929 ("The test of location of the wrongful act or omission . . . is of limited application to shipboard torts, because of the varieties of legal authority over waters she may navigate."); *id.* at 589–90, 73 S. Ct. at 932 (finding an argument that justice required "adjudication under American law to save seamen expense and loss of time in returning to foreign forum" unpersuasive). The national interests to be served by the application of U.S. law may also influence the weight to be assigned each factor. *See Schexnider*, 817 F.2d at 1161 (citing *Rhoditis*, 398 U.S. at 308–09, 90 S. Ct. at 1733–34).

B. *Analysis*

TMM and MarMex claim the *Lauritzen-Rhoditis* factors overwhelmingly require to application of Mexican law. PMM and the Underwriters, on the other hand, claim that the *Lauritzen-Rhoditis* factors favor U.S. law.[3]

---

[3]PMM and the Underwriters also assert that Defendants must establish that a conflict exists between the applicable Mexican substantive law and U.S. substantive law before the Court conducts a choice of law analysis. In support of this assertion Plaintiffs cite a Fifth Circuit case

*1. Place of the Wrongful Act*

The first factor a court considers in a *Lauritzen-Rhoditis* analysis is the place of the wrongful act. TMM and MarMex claim that the allision took place in Mexican waters and, specifically, within the Exclusive Economic Zone ("EEZ") of Mexico. Plaintiffs agree that the allision occurred within the Mexican EEZ, but they assert that the EEZ merely gives Mexico the right "to exercise exclusive control over economic matters involving fishing, the seabed, and the subsoil," but not the right to exclusive control over navigation. *R.M.S. Titanic, Inc. v. Haver*, 171 F.3d 943, 965 n.3 (4th Cir.), *cert. denied*, 528 U.S. 825, 120 S. Ct. 74, 145 L. Ed. 2d 63 (1999). Because the accident did not occur in Mexican territorial waters, Plaintiffs argue that the place of the wrongful act is of minimal importance.

The Court acknowledges that the accident occurred in the EEZ of Mexico, which may not be technically within Mexican territorial waters. However, the "place of the wrongful act" factor should not be disregarded on such a technicality. Even though the wrongful act did not occur within Mexico, it occurred approximately 46 miles off the coast of Mexico in the Bay of Campeche. This location is substantially closer to Mexico than it is to the United States, and this factor should thus weigh in favor of applying Mexican law.

*2. The Law of the Flag*

Next the Court considers the law of the flag, which is "of cardinal importance" in the

---

about whether Texas must recognize an English judgment, which is inapposite. *See Soc'y of Lloyd's v. Turner*, 303 F.3d 325, 332–33 (5th Cir. 2002) (quoting *Hunt v. BP Exploration Co.*, 492 F. Supp. 885, 910 (N.D. Tex. 1980)). Plaintiffs have not presented the Court with any Fifth Circuit authority indicating that Defendants are required to present the Court with the provisions of foreign substantive law that are in conflict with U.S. substantive law before a *Lauritzen-Rhoditis* analysis is conducted.

*Lauritzen-Rhoditis* analysis. *Lauritzen*, 345 U.S. at 584. Both the Azteca and the Totonaca are Mexican flagged. Plaintiffs argue that this factor should not weigh "too heavily in favor of applying the law of Mexico" because the Azteca has substantial contacts with the United States. Plaintiffs cite *Rhoditis* in support of this assertion. In *Rhoditis*, the Supreme Court held that the law of the United States should apply even though the flag, the seaman's nationality, and the contract all weighed in favor of Greek law. *See Rhoditis*, 398 U.S. at 308–10, 90 S. Ct. at 1733–34. The Supreme Court stated that these factors were "minor weights in the scales compared with the substantial and continuing contacts that [the shipowner] ha[d] with this country." *Id.* at 310, 90 S. Ct. at 1734. Here, Plaintiffs claim that the Azteca was operating under a U.S. flag until 2004 and continues to maintain significant contacts with the United States, but they did not provide the Court with any evidence of the alleged significant contacts. In *Rhoditis*, the vessel and its sister ships "were earning income from cargo originating or terminating" in the United States. *Id.* Here, Plaintiffs claim that the Azteca may have been operating under a Mexican "flag of convenience" at the time of the accident. However, the only additional evidence offered in support of this assertion is that the Azteca was purchased by a U.S. company for $1. Plaintiffs have failed to make a showing that the contacts the Azteca had with the United States are in any way comparable to the contacts the *Rhoditis* vessel had. Because Plaintiffs have not shown that the contacts the Azteca had with the United States were substantial and continuous, the law of the flag factor provides significant weight in favor of the application of Mexican law.[4]

---

[4]Plaintiffs assert that discovery is still pending and imply that they may be able to establish that the Azteca was operating under a flag of convenience at a later date. However, this case was filed in July, 2005, and extensive discovery has already been conducted. *See* Defs.' Reply at 7 n.5 (noting that Defendants have already produced over 6,600 documents and deposed a company representative who explained Defendants' operations).

*3. The Allegiance or Domicile of the Injured*

While there is not an injured individual in this action, Plaintiffs could be considered to be "injured" because their vessel was damaged. Thus, the Court will consider this factor. Plaintiffs claim, without citing authority, that PMM's domicile should not be considered because it chose to bring suit in the United States. The Court is not conducting a venue analysis, so it does not find this argument persuasive. PMM is a Mexican corporation, and its base of operations is in Mexico, which weighs in favor of Mexican law. The other Plaintiffs are the Underwriters, and the lead underwriter, Navigators Insurance Services of Texas, Inc., is based in Houston, Texas. Since one Plaintiff is domiciled in Mexico and one is in the United States, the Court finds that this factor is neutral.

*4. The Allegiance of the Defendant Shipowner*

The next factor to be considered is the allegiance of the defendant shipowner. *See Rhoditis*, 398 U.S. at 309–10, 90 S. Ct. at 1734–35. TMM and MarMex are both Mexican companies. Plaintiffs claim that the weight of this factor should be diminished because the Azteca was purchased for $1 from a U.S. company and continues to maintain significant contact with the U.S. following the sale. However, the *ship*'s allegiance is not in question, here. That should be considered under the law of the flag. The Azteca's contacts with the U.S. have little relevance in the determination of its owner's allegiance, which is, unquestionably, Mexico. Thus, this factor weighs in favor of the application of Mexican law.

*5. The Place of the Contract*

The fifth *Lauritzen-Rhoditis* factor is the place of contract. The facts of the instant case do not involve a contract between the Parties. Thus, this factor bears no weight in the analysis.

*6. The Inaccessibility of the Foreign Forum*

In *Laurtizen*, the Supreme Court considered whether "justice requires adjudication under American law to save seamen expense and loss of time in returning to a foreign forum." *Lauritzen*, 345 U.S. at 589–90, 73 S. Ct. at 932. Here, the Court must consider whether the application of Mexican law would require adjudication of the dispute in Mexico and cause substantial expense and loss of time to Plaintiffs, who would be required to litigate the case in Mexico. *See Lauritzen*, 345 U.S. at 589–90, 73 S. Ct. at 932 (finding that the injured seaman was not "disadvantaged in obtaining his remedy under Danish law from being in New York instead of Denmark"). Under Defendants' theory that the Mexican Limitation is substantive law and that it requires that all cases relating to the incident be filed in the same court as the limitation, this factor may be relevant. However, as explained below, the Court finds that the London Convention as ratified by Mexico is procedural. Thus, the Court will not apply the London Convention, and Plaintiffs will not be required, even if Mexican law is applied, to litigate this case in Mexico. Therefore, this factor does not weigh in the analysis.

  7. *The Law of the Forum*

The law of the forum factor is "given little weight in determining choice of law." *Fogleman v. ARAMCO*, 920 F.2d 278, 283 (5th Cir. 1991). Since the case was brought in a U.S. District Court, the slight weight given to it lies in favor of the application of U.S. law. *See id.* ("The Foglemans brought their suit in federal district court. Whatever weight the law-of-the-forum factor has, therefore, tells on the side of the application of United States law.").

  8. *The Shipowner's Base of Operations*

The eighth consideration in the *Lauritzen-Rhoditis* analysis is the shipowner's base of operations. TMM and MarMex are based in Mexico. Plaintiffs claim that discovery is ongoing and

9

that they are still trying to determine the "true nature and extent of Defendants' base of operations." Pls.' Resp. at 9. However, this case was filed in July, 2005, and extensive discovery has already been conducted. Plaintiffs have not offered evidence of ties to the United States that could be considered significant enough to deem TMM or MarMex's base of operations to be in the United States. Thus, this factor weighs in favor of the application of Mexican law.

    9. *Conclusion Regarding Choice of Law*

The Court weighs the factors discussed above, keeping in mind the Supreme Court's admonition that the factors should not be applied mechanically. *See Rhoditis*, 398 U.S. at 308–09, 90 S. Ct. at 1733–34. Even so, the only factor weighing in favor of the application of U.S. law is the law of the forum. The fact that Plaintiffs brought this case in a U.S. District Court and that the Court is therefore more familiar with U.S. law than Mexican law[5] is by no means substantial enough of a consideration to outweigh the factors that favor the application of Mexican substantive law. The allision occurred forty-five miles off the coast of Mexico, in the Bay of Campeche. Both vessels bore the Mexican flag. The defendant shipowner is a Mexican corporation, and its base of operations is in Mexico. The *Lauritzen-Rhoditis* factors overwhelmingly favor the application of Mexican substantive law. Thus, the part of Defendants' Motion and Notice to Apply Mexican Law that requests the application of Mexican substantive law is **GRANTED**.

## III. "Transfer" of Venue

TMM and MarMex claim that Mexican law applies to this suit and that Mexican law requires any claims relating to the Mexican Limitation to be "transferred" to the court in which the limitation

---

[5]Furthermore, this Court has, on many occasions, applied Mexican law and is sufficiently adept at the application of foreign law to consider this factor almost irrelevant.

action is pending. Therefore, according to TMM and MarMex, this Court should transfer this case to the 6th Judicial District in Civil Matters of the First Circuit of Mexico, which the Court construes as a motion to dismiss in favor of litigation in Mexico.

Plaintiffs correctly assert that cases cannot be transferred from one nation to another. Rather, if the defendant in an international case believes the case should be in a foreign court, that defendant should file a motion to dismiss for *forum non conveniens*. In the instant case, Defendants already filed a Motion to Dismiss for *Forum non Conveniens*, and this Court already denied said Motion. To do so again is redundant and unnecessary. Therefore, Defendants' Motion to "Tranfer" is **DENIED**.[6]

**IV. Summary Judgment**

*A. Legal Standard*

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *see also Celotex Corp.*, 477 U.S. at 323, 106 S. Ct. at 2252–53. If the party moving for summary judgment bears the initial burden of proof, "either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).When the party moving for summary judgment does not bear the initial burden of proof, said party must "inform[] the district court of the basis for its motion, and identify[] those portions of [the

---

[6]Plaintiffs also claim that transfer is not proper because the Mexican statute of limitations to establish liability, which is two years, has run. Defendants argue that it has not run and that, even if it had, Plaintiffs' failure to file a claim in the court in which the Mexican Limitation proceeding was pending is their own fault. During the Second Motion Hearing, Dr. Melo testified that the Mexican Limitation had been renewed every year since it was filed, so Plaintiffs should still be able to file in Mexico should they desire to do so.

record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323, 106 S. Ct. at 2253. Then, in either case, the non-moving party must come forward with "specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). The court must view all evidence in a light most favorable to the non-movant and "draw all reasonable inferences in favor of the non-moving party." *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S.242,249–50, 106 S. Ct. 2505, 2511–12, 91 L. Ed. 2d 202 (1986). If the evidence would permit a reasonable fact-finder to find in favor of the non-moving party, summary judgment should not be granted. *Liberty Lobby*, 477 U.S. at 247–48, 106 S. Ct. at 2510. On the other hand, "[i]f the evidence is merely colorable . . . or is not significantly probative, summary judgment may be granted." *Id.* at 249–50, 106 S. Ct. at 2511 (citations omitted).

*B. Analysis*

Defendants claim that the Limitation of Liability Act is substantive law in Mexico and that it requires all claims regarding the incident for which the limitation was established to be brought in the same Mexican court in which the Limitation was originally filed. Thus, TMM and MarMex request that the Court dismiss this case because it must be heard in the 6th Judicial District in Civil Matters of the First Circuit of Mexico. In the alternative, TMM and MarMex request that the Court stay the proceedings pending the outcome of the Mexican Limitation action and require PMM and the Underwriters to make an appearance therein. If the Court is unwilling to do so, TMM and MarMex request that the Court apply the substantive law of Mexico and limit the liability of the Defendants to the amount of the Mexican Limitation fund.

Conversely, Plaintiffs claim that the Mexican limitation is merely a procedural method of establishing a fund in which claimants receive their proportionate share of the funds. Since U.S. Courts that are applying foreign substantive law still follow U.S. procedural law, Plaintiffs argue that the Court is not required to observe the allegedly procedural Mexican Limitation. The Supreme Court, in *Black Diamond Steamship Corp. v. Robert Stewart & Sons* (*The Norwalk Victory*), addressed this issue. It explained that "if . . . the [foreign] limitation attaches to the right," then U.S. courts should observe the limitation. *The Norwalk Victory*, 336 U.S. 386, 395, 69 S. Ct. 622, 627, 93 L. Ed. 754 (1949). However, if the limitation "merely provides procedural machinery by which claim[s] otherwise created are brought into concourse and scaled down to their proportionate share of a limited fund," then the U.S. court need not observe the foreign limitation because the "forum is not governed by foreign rules of procedure." *Id.* at 396, 69 S. Ct. at 627. The Supreme Court warned, however, that "these apparently clear-cut alternatives are [not] exhaustive" in that "a limit which attaches not to an individual's right of recovery but to the aggregate claims arising from a given tort can be said to be 'attached to the right' only in a special sense of the phrase, and a rule which operates to cut down the amount recoverable by a claimant cannot be fitted within any but a very broad definition of the term 'procedure.'" *Id.* Here, if the 1994 Mexican Navigation Act,[7] which incorporates the London Convention, creates a substantive right, then the Court must honor it. If the Act merely provides a way to quantify rights that parties obtain from other sources, then the Court is not required to observe the Mexican Limitation.

The Parties' experts eloquently offered their starkly conflicting opinions regarding whether

---

[7]Both Parties agree that the 1994 Navigation Act, not the 2006 Navigation Act, applies in this instance because the allision occurred before the 2006 Act was enacted.

the London Convention as adopted by Mexico in 1994 is procedural or substantive during the Second Hearing. Defendants' expert, Dr. Melo, was involved in drafting the 1994 Mexican Navigation Act and was thus instrumental in Mexico's ratification of the London Convention. Dr. Melo testified that the 1994 Navigation Act only adopts the first eight articles of the London Convention, which he claims are substantive, and that the ninth article, which he claims contains the procedural mechanisms for the enforcement of the substantive rights contained in the first eight articles, was not adopted due to time constraints. Thus, according to Dr. Melo, the 1994 Navigation Act contains no procedural mechanisms and is entirely substantive. He claims that the 1994 Act creates a substantive right to limit one's liability.

Plaintiffs' expert, Dr. Enriquez, who was involved in drafting the 2006 Mexican Navigation Act and is responsible for the regulations arising from the 2006 Act, explained that the 1994 Act details the quantum and the procedure for determining the quantum of a limitation fund, and that it incorporates the London Convention. Dr. Enriquez testified that all Mexican substantive rights arise in the Civil Code, and that, even if Mexico had not adopted the London Convention, the right to recover, which is bestowed in the Civil Code, would still be available. According to Dr. Enriquez, the London Convention merely provides the procedural mechanism for limiting the amount available if a party should exercise its right of recovery under the Mexican Civil Code.[8] Dr. Enriquez, who has an LLM in English maritime law, also testified that English courts consider the London Convention to be procedural, not substantive.

While the Court found the testimony and experience of both experts to be beyond reproach,

---

[8]Dr. Enriquez consulted with three other admiralty professors, who each agreed that liability limitation in Mexico is procedural. *See, i.e.*, Second Motion Hearing; Plaintiffs' Bench Brief in Support of Application of the U.S. Limitation of Liability Act Exs. I–K.

and the testimony of both to be highly persuasive, Dr. Enriquez's interpretation is more in line with the distinction noted by the Supreme Court in *The Norwalk Victory*. While Dr. Melo's contention that a right to limit one's liability is created by the London Convention seems intuitively correct, the Court is convinced that such a right fits within the Supreme Court's "broad definition of 'procedure.'" The "right" created by the London Convention creates a right to limit the *remedy*, not a substantive right to recover. *See Oceanic Steam Navigation Co. v. Mellor* (*The Titanic*), 233 U.S. 718, 733–34, 34 S. Ct. 754, 756, 58 L. Ed. 1171 (holding that a U.S. limitation may be applied to foreign ships that are sued in the United States when they are not subject to U.S. substantive law and differentiating between limiting the remedy and limiting the right). In Mexico, the Mexican Civil Code creates the substantive right to recover, and the quantum of recovery is determined by the Navigation Act/London Convention. Thus, the Court finds that the London Convention, as incorporated in the Mexican Navigation Act, is procedural. Since U.S. courts apply U.S. procedural law, the instant claim does not have to be heard in the same court in which the Mexican Limitation is pending. Additionally, even though Mexican substantive law applies to the instant case, if Defendants are found liable under Mexican law, their liability will not be limited by the Mexican Limitation now pending in the 6th Judicial District in Civil Matters of the First Circuit of Mexico. TMM and MarMex's Motion for Summary Judgment is **DENIED**.

**V.  Conclusion**

For the reasons articulated above, TMM and MarMex's Motion and Notice to Apply Mexican Law is **GRANTED IN PART AND DENIED IN PART**. Mexican substantive law applies to this case, but Mexican procedural law does not. The Mexican Navigation Act is procedural. TMM and MarMex's Motion to Transfer Venue to the 6th Judicial District in Civil Matters of the First Circuit

of Mexico is **DENIED**.  TMM and MarMex's Motion for Summary Judgment and all the requests made therein are **DENIED**.

      **IT IS SO ORDERED**.

      **DONE** this 10th day of May, 2007, at Galveston, Texas.

_____
Samuel B. Kent
United States District Judge