UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| PERFORACIONES MARITIMAS MEXICANAS S.A. de C.V. and CERTAIN REINSURING UNDERWRITERS SUBSCRIBING TO REINSURANCE CONTRACT NO. AHE-030044 AS AMENDED TO NO. AHE-04004,<br><br>Plaintiffs,<br><br>v.<br><br>SEACOR HOLDINGS, INC., GRUPO TMM S.A. de C.V., and MARITIMA MEXICANA S.A. de C.V.,<br><br>Defendants. | § § § § § § § § § § § § § § § § § § § § §  CIVIL ACTION NO. 4:05-cv-419<br>(ADMIRALTY) |

## MEMORANDUM AND ORDER

Pending before the Court is Defendants' Motion for Reconsideration pursuant to Federal Rule of Civil Procedure 54(b). Defendants ask the Court to reconsider a July 21, 2006 Order on Defendant's Motion to Dismiss, Docket No. 67. After consideration of the parties' arguments and the relevant law, the Court finds that Defendants' Motion, Docket No. 197, should be **DENIED**.

**I.   BACKGROUND**

This case involves an allision between Defendants' Mexican flagged supply vessel, the ISLA AZTECA, and Plaintiffs' Mobile Offshore Drilling Unit TOTONACA, another Mexican flagged vessel. The allision occurred on March 31, 2004 in Mexico's Bay of Campeche. Although Defendants' motion suggests that location of the allision was within the "territorial waters" of Mexico, Defendants clarify that it actually took place within Mexico's exclusive

economic zone. *See* discussion *infra* Part II.A. It remains undisputed that both Plaintiff Perforaciones Maritimas Mexicanas,[1] the owner of the TOTONACA, and Defendant Maritima Mexicana (MarMex),[2] owner and operator of the ISLA AZTECA, were incorporated in Mexico.

On May 6, 2004, Defendant MarMex filed a petition to limit its liability in Mexico under the Convention on Limitation of Liability for Maritime Claims, and that limitation fund was established on October 27, 2004 in the amount of US$427,460.97. On May 17, 2004, Plaintiff PMM filed a criminal complaint known as a *Querella* in Mexico asking the Public Prosecutor to conduct a criminal investigation and issue an indictment against MarMex and the crew of the ISLA AZTECA. The Public Prosecutor did not find sufficient evidence of criminal conduct or criminal negligence, and declined to prosecute those charges. On July 28, 2005, Plaintiffs filed this lawsuit in the Galveston Division of the Southern District of Texas (the "Predecessor Court").

On July 21, 2006, the Predecessor Court denied Defendants' motion to dismiss on *forum non conveniens*, principles of international comity, and for lack of subject matter jurisdiction. In November 2006, the Fifth Circuit dismissed Defendants' interlocutory appeal of that Order, finding that the Order did not determine the parties' substantive rights and liabilities. *See Perforaciones Exploración y Producción et al. v. Grupo TMM S.A. et al.*, No. 6-41228 (5th Cir. Nov. 30, 2006). The case was reassigned to this Court on October 26, 2007. Defendants filed the pending Motion for Reconsideration of the Predecessor Court's Order on January 7, 2008. The Court granted Plaintiffs' request for additional time to respond to the Motion, allowing them

---

[1] PMM's underwriters are also Plaintiffs in this lawsuit. PMM stresses that its lead underwriter, Navigators Insurance Services of Texas, Inc., is a Texas corporation with its principle place of business in Houston, Texas. (Pls.' Resp. 3.) Defendants note that a subrogated underwriter steps into the shoes of its insured.

[2] MarMex is 60% owned by a Mexican entity, Defendant Grupo TMM, and 40% owned by Seacor Holdings, Inc. or Seacor Marine Mexico, Inc. (SMII). At the time the original Order was entered, the parties disputed whether the stock is held by Seacor or by SMII. Recent deposition testimony indicates that MarMex has merged with TMM. (Pls.' Resp. 22 Plaintiffs.) Plaintiffs claim that Seacor exercised "significant operational control" over the ISLA AZTECA. (See Pls.' Response 23.) Plaintiffs' claims against Seacor were dismissed in July 2006.

2

the opportunity to complete certain depositions that Plaintiffs argued might provide further evidence that Texas is a convenient forum for Defendants. The case is set for trial on April 7, 2008.

## II.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 54(b) allows the Court to reconsider "any order or other decision . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties." FED. R. CIV. P. 54(b); *see also Matagorda Ventures, Inc. v. Travelers Lloyds Ins. Co.*, 208 F. Supp. 2d 687, 688 (S.D. Tex. 2001). A motion to reconsider should "clearly establish either a manifest error of law or fact or must present newly discovered evidence. These motions cannot be used to raise arguments which could, and should, have been made before the judgment issued." *Ross v. Marshall*, 426 F.3d 745, 763 (5th Cir. 2005) (citing *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir.1990)).

The doctrine of the law of the case and the principle of judicial comity are also relevant to the Court's reconsideration of an order issued by a predecessor judge. "[W]hen a district judge has rendered a decision in a case, and the case is later transferred to another judge, the successor should not ordinarily overrule the earlier decision." *Loumar*, 698 F.2d at 762 (citing 18 C. WRIGHT, A. MILLER & E. COOPER, FEDERAL PRACTICE & PROCEDURE § 4478 (1981)). However, neither the law of the case doctrine nor the principle of judicial comity "is . . . a barrier to the correction of judicial error," *Loumar, Inc. v. Smith*, 698 F.2d 759, 762 (5th Cir. 1983); *see also Gallimore v. Missouri Pac. R. Co.*, 635 F.2d 1165, 1172 (5th Cir. 1981) (noting that judicial comity "should give way, if the need should arise, to the interests of justice and economy when those interests would be flouted by rigid adherence to the rule"), and the Court retains discretionary authority to reconsider a predecessor judge's decision, *see Christianson v. Colt*

*Industries Operating Corp.*, 486 U.S. 800, 815-18 (1988) ("A court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance, although as a rule courts should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice.'"); *Loumar*, 698 F.2d at 762 (noting a successor judge's "bountiful discretion" in reviewing a predecessor judge's work, but cautioning "A judge should hesitate to undo his own work. Still more should he hesitate to undo the work of another judge. But until final judgment or decree there is no lack of power, and occasionally the power may properly be exercised." (citing *Peterson v. Hopson*, 29 N.E.2d 140, 144 (Mass. 1940)); *Abshire v. Seacoast Products, Inc.*, 668 F. 2d 832, 837-38 (5th Cir. 1982) ("The successor judge has the same discretion as the first judge to reconsider the order.").

### III. ANALYSIS

#### A. Subject Matter Jurisdiction

In the Order, the Predecessor Court denied Defendant's motion to dismiss for lack of subject matter jurisdiction. There is no clearly controlling precedent on this question, and the Predecessor Court did not commit a manifest error of law in finding that subject matter jurisdiction existed.

In addition to the arguments presented in their original Motion to Dismiss, Defendants now argue that the United Nations Convention on the Law of the Sea ("UNCLOS"), Dec. 10, 1982,, 21 I.L.M. 1245, 1833 U.N.T.S. 3., and the Treaty on Maritime Boundaries between the United Mexican States and the United States of America (Carribbean Sea and Pacific Ocean) May 4, 1978, 2143 U.N.T.S. 405 ("Treaty on Maritime Boundaries"), preclude the United States from exercising subject matter jurisdiction over this case. It does not appear, however, that

either treaty confers exclusive jurisdiction on the Mexican courts over allisions occurring within its exclusive economic zone (EEZ).[3]

UNCLOS declares that coastal state have certain sovereign rights in the EEZ, which "shall not extend beyond 200 nautical miles from the baselines from which the breadth of the territorial sea is measured." UNCLOS, art. 57. Article 56 of UNCLOS sets forth those rights:

> In the exclusive economic zone, the coastal State has: (a) sovereign rights for the purpose of exploring and exploiting, conserving and managing the natural resources, whether living or non-living, of the waters superjacent to the sea-bed and of the sea-bed and its subsoil, and with regard to other activities for the economic exploitation and exploration of the zone, such as the production of energy from the water, currents and winds; (b) jurisdiction as provided for in the relevant provisions of this Convention with regard to: (i) the establishment and use of artificial islands, installations and structures; (ii) marine scientific research; (iii) the protection and preservation of the marine environment; (c) other rights and duties provided for in this Convention.

UNCLOS, art. 56. Non-coastal states retain certain rights in the exclusive economic zone, as well. UNCLOS art. 58 (stating that, in the EEZ, all states enjoy "the freedoms referred to in article 87 of navigation and overflight and of the laying of submarine cables and pipelines, and other internationally lawful uses of the sea related to these freedoms, such as those associated with the operation of ships, aircraft and submarine cables and pipelines, and compatible with the other provisions of this Convention"). Nothing in the language of UNCLOS indicates that Mexico's limited sovereign rights related to the exploration and exploitation of natural resources in the EEZ deprives the United States courts of jurisdiction over torts or collisions that occur on

---

[3] Plaintiffs are correct that the United States is a signatory to UNCLOS, but has not ratified the Convention. The United States has acknowledged that the provisions of UNCLOS regarding the exclusive economic zone are declarative of customary international law, however, see *Mayaguezanos por la Salud y el Ambiente v. United States*, 198 F.3d 297, 305 n.14 (1st Cir. 1999); RESTATEMENT (THIRD) OF FOR. REL. LAW § 514, cmt. a, Reporter's Note 1. Additionally, as a signatory to the Convention, the United States is generally "obliged to refrain from acts that would defeat the object and purpose of the agreement," *Mayaguezanos*, 198 F.3d at 305 n. 14 (citing *Kreimerman v. Casa Veerkamp, S.A. de C.V.*, 22 F.3d 634, 638 n. 9 (5th Cir. 1994); RESTATEMENT (THIRD) OF FOR. REL. LAW, pt. III, introductory note, at 145). Because the Court finds that the relevant treaties do not preclude subject matter jurisdiction, it need not reach the question of whether the Defendants have standing to assert rights under either UNCLOS or the Treaty on Maritime Boundaries.

those waters. *See also* RESTATEMENT (THIRD) OF FOR. REL. § 511, cmt. b (noting that the "'sovereign rights' which a coastal state enjoys in its exclusive economic zone . . . are functional in character, limited to specified activities.").[4]

The Treaty of Maritime Boundaries does not compel a different conclusion. The treaty states that: "North of the maritime boundaries established by Article 1, the United Mexican States shall not, and south of said boundaries, the United States of America shall not, claim or exercise for any purpose sovereign rights or jurisdiction over the waters or seabed and subsoil." Treaty of Maritime Boundaries, art. II. The Treaty of Maritime Boundaries also notes that the treaty "shall not affect or prejudice the positions of either Party with respect to "sovereign rights or jurisdiction for any other purpose." Treaty of Maritime Boundaries, art. III. Again, this language does not appear to directly address the United States courts' jurisdiction over an allision between vessels in that area.

Nor did the Predecessor Court commit a manifest error of law when determining that subject matter jurisdiction was appropriate based on relevant United States case law. The Supreme Court's statement in *Victory Carriers, Inc. v. Law*, 404 U.S. 202, 205 (1971), that "the maritime tort jurisdiction of the federal courts is determined by the locality of the accident and that maritime law governs only those torts occurring on the navigable waters of the United States" does appear to be *dicta*, and the Court's determination that the locality test set forth in *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995), only requires that the tort occur "on navigable waters" is not clearly erroneous.[5] Both the Supreme

---

[4] The Predecessor Court also heard expert testimony to this effect prior to entering the Order. (*See* Mot. Hearing, Tr. Apr. 27, 2007, p. 59-60.)

[5] The term "navigable waters of the United States" has been construed in some contexts to include the high seas. *See, e.g., Reynolds v. Ingalls Shipbuilding Div., Litton Systems, Inc.*, 788 F.2d 264, 268 (5th Cir. 1986). At least prior to the creation of the concept of an EEZ, the high seas were considered to encompass "all parts of the sea that are not included in the territorial sea or in the internal waters of a State." *Id.* (citing 1 BENEDICT ON ADMIRALTY § 141, at 9-2 (7th ed.)). The allision at issue in this case did not take place in Mexico's territorial sea, but instead in its

Court and the Fifth Circuit have found that subject matter jurisdiction exists in cases involving collisions between two foreign vessels on the high seas, but that Courts may decline such jurisdiction on grounds such as *forum non conveniens*. *See, e.g., Atlantic Transport Co. of W.Va. v. Imbrovek*, 234 U.S. 52, 60 (1914); *The Belgenland*, 114 U.S. 355 (1885); *Perusahaan Umum Listrik Negara Pusat v. M/V Tel Aviv*, 711 F.2d 1231 (5th Cir. 1983); *see also* 1-VIII BENEDICT ON ADMIRALTY § 129 ("Admiralty courts have jurisdiction of admiralty suits entirely between foreigners when proper service can be had or property attached, but generally a court may, in its discretion, dismiss the case on grounds of forum non conveniens."); 1 THOMAS J. SCHOENBAUM ADMIRALTY & MAR. LAW § 14-9 (4th ed. 2004) (declaring that "[i]n the United States, collision jurisdiction potentially extends to the four corners of the globe, to the high seas and even foreign territorial waters," but noting that "the courts have adopted several ways of abstaining from exercising jurisdiction . . . in collision cases where justice requires"). At least one Circuit has found subject matter jurisdiction to exist where the tort occurred in the *territorial* waters of another nation, but that case involved an American plaintiff. *See Neely v. Club Med Management Services, Inc.*, 63 F.3d 166, 170 (3d Cir. 1995); *see also* GRANT GILMORE & CHARLES L. BLACK, JR., THE LAW OF ADMIRALTY 33 (2d ed. 1975) ("Occurences on foreign navigable waters may also round admiralty jurisdiction.").

The Court is not aware of a case that addresses the precise fact scenario present in this case: namely, an *in personam* suit involving an allision between two vessels operating under the

---

exclusive economic zone. *Compare* UNCLOS, Part II, Sec. 2 (discussing the territorial sea) *with* UNCLOS, Part V (discussing the exclusive economic zone). Some circuits have discussed the EEZ and the high seas as separate areas. *See, e.g., Humane Soc'y of the United States v. Clinton*, 236 F.3d 1320, 1322 (Fed. Cir. 2001). There is also at least some reason to believe that the EEZ might properly be considered part of the high seas subject to the coastal state's limited sovereign rights, however. *See* RESTATEMENT (THIRD) OF FOR. REL. § 511, Reporter's Note 2 (acknowledging that UNCLOS did not expressly declare that the EEZ remains part of the high seas, but noting that "the history of the negotiations indicates that they consider that the zone remains high seas, although it will be subject to exceptional rights in favor of the adjacent coastal state."). The allision at issue in this case could, therefore, at least plausibly be considered to have occurred within "the navigable waters of the United States."

flag of the same country that occurred in that country's Exclusive Economic Zone. In the absence of clearly controlling precedent to the contrary, however, the Court cannot find that the decision to deny Defendant's motion to dismiss constituted a manifest error of law.

### B.   *Forum Non-Conveniens* and International Comity

Although the Court has discretion to reconsider the Predecessor Court's decision to deny Defendant's motion to dismiss on grounds of *forum non conveniens* and international comity, it does not believe that it would be in the interests of justice to do so. Given the facts of this case, this Court likely would have reached a different conclusion if it had been considering Defendant's motion to dismiss eighteen months ago. The Predecessor Court's decision on these matters was discretionary, however, and Defendants do not argue that the court applied an incorrect legal standard. Thus, it is difficult for this Court to find that the Predecessor Court' clearly committed a manifest error of law. Furthermore, it appears that some of the factors that may have weighed in favor of dismissal eighteen months ago may now tilt the other direction.[6] For example, Plaintiffs note that deposition testimony has been obtained from all witnesses, suggesting that difficulties in accessing sources of proof have been overcome. Plaintiffs have also provided additional evidence of Defendants' relationship with the United States that was uncovered through the discovery process. Defendants point out that the Predecessor Court made its decision on Defendant's motion to dismiss before determining that it would need to apply Mexican substantive law to the dispute. While this factor merits some weight in the balancing analysis, the Court cannot say that it renders the Predecessor Court's previous decision clearly erroneous.

---

[6] The Court does agree with Defendants, however, that any questions as to whether an alternate forum exists in Mexico could be resolved through a conditional order of dismissal. *See, e.g., Perusahaan Umum Listrik Negara Pusat v. M/V Tel Aviv*, 711 F.2d 1231, 1239 (5th Cir. 1983).

The Court recognizes that Defendants have and will continue to incur costs and inconveniences that they would not have faced had this lawsuit been prosecuted in Mexico. Given the standard for a motion for reconsideration, and taking due account of the principles of judicial comity and law of the case, however, the Court declines to reconsider the Predecessor Court's decision to deny Defendant's motion to dismiss on grounds of forum non conveniens and international comity.

## III. CONCLUSION

For the foregoing reasons, Defendants' Motion for Reconsideration, Docket No. 67, is **DENIED**.

**IT IS SO ORDERED.**

**SIGNED** this 24th day of March, 2008.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE